```
                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION


ARNOLD BENTLEY, et al.,         :
                                :    NO. 1:04-CV-00460
     Plaintiffs,                :
                                :    OPINION AND ORDER
                                :
     v.                         :
                                :
                                :
JEFF McCARTY, et al.,           :
                                :
     Defendants.                :
```

This matter is before the Court on Defendants' Motion for Summary Judgment (doc. 38), Plaintiffs' Memorandum in Opposition to Defendants' Motion (doc. 47), and Defendants' Reply Memorandum in Further Support of its Motion (doc. 48). For the reasons stated herein, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

**I. Background**

Plaintiffs Arnold and Nancy Bentley filed the instant suit against Defendants Jeff McCarty, Kenneth Dick, Richard DeMint, and Shawn Cooley, employees of the Adams County Sheriff's Office, after a warrant search of Plaintiffs' property allegedly uncovered cocaine and marijuana (doc. 38). Plaintiffs claim that Defendants fabricated the evidence against them and raise the following federal causes of action pursuant to 42 U.S.C. § 1983: (1) violation of Fourth Amendment rights not to be arrested or

otherwise seized, not to be held in custody, and/or not to be prosecuted without probable cause, (2) violation of Fourteenth Amendment due process rights by allegedly planting and/or fabricating evidence, (3) violation of Fourth Amendment rights for alleged malicious prosecution (doc. 1).

The facts in this case were outlined in a previous Order of the Court (doc. 28), and for the most part, are restated here. The Defendants in this matter executed a search warrant of the Plaintiffs' home on July 15, 2002 (doc. 20).  A confidential informant ("CI") provided the information which secured the warrant (Id.).  The CI reported seeing someone buy an ounce of cocaine from Plaintiffs in the early morning of July 15, 2002 at a mobile home located on the Plaintiffs' property (Id.).  Defendants maintain that while searching the Plaintiffs' property, a drug dog discovered a ziplock bag within a paper bag (Id.).  The ziplock bag contained a white powdery substance that the Defendants maintain was cocaine (Id.).  The Defendants aver that this cocaine was found underneath the mobile trailer described by the CI (Id.).

However, the Plaintiffs maintain that while the search warrant was being executed, Plaintiff Arnold Bentley witnessed one of the Defendants, Officer Jeff McCarty, enter the Plaintiffs' barn and exit with a paper sack that the Plaintiffs

believe contained "deer cocaine"[1] (Id.). The Plaintiffs submit that they routinely stored deer cocaine in their barn (Id.). Plaintiff Arnold Bentley alleges that he witnessed Defendant McCarty throw the bag he brought from the barn in front of the trailer (doc. 47). Mr. Bentley also claims that the cocaine produced at Plaintiffs' criminal trial was bagged differently than the white powder found in Plaintiffs' barn (Id.). The Plaintiffs deny ever possessing and/or selling cocaine (doc. 20.). The Plaintiffs were charged with possession of cocaine in an amount that equals or exceeds 100 grams but is less than 500 grams - ultimately, the Plaintiffs were found not guilty (Id.).

Defendants filed the instant motion for summary judgment on August 31, 2006 (doc. 38). Defendants present several theories in support of their motion, but their arguments can be summarized as follows: (1) Plaintiffs have no evidence to support their claim of fabrication of evidence, or, alternatively, (2) Defendants are qualifiedly immune from prosecution (Id.). Plaintiffs dispute the qualified immunity argument and point primarily to Plaintiff Arnold Bentley's eye-witness testimony as evidence in support of their claims (doc. 47).

**II. Applicable Legal Standard**

Although a grant of summary judgment is not a substitute

---

[1] Deer cocaine is a habit forming mineral that attracts deer and is often used by hunters to lure deer.

for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also

-4-

LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781,

784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating

that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**III. Analysis**

    **A. Counts One and Three of the Complaint**

The Court notes that while Plaintiffs' Complaint outlines three causes of action, in their briefing on Defendants' motion for summary judgment, Plaintiffs have failed to respond to Defendants' submission that Causes One and Three of Plaintiffs' Complaint fail as a matter of law (doc. 47). Plaintiffs' first and third causes of action are brought pursuant to § 1983 and allege that Plaintiffs were deprived of their Fourth Amendment rights not to be arrested or otherwise seized, held in custody, and/or not to be prosecuted without probable cause; and to be free from malicious prosecution (doc. 1). Plaintiffs now concede that Defendants had probable cause to search and arrest Plaintiffs, and only maintain their fabrication of evidence charge outlined in Cause Two of the Complaint (doc. 47). Plaintiffs' stated theory of the case is that:

> [O]ne of the Officers entered the barn during the raid on Bentley's property and found a bag containing a white substance known as "deer cocaine," a variety of salt. Believing it was

-7-

> an illegal substance, the Officers arrested the Bentleys for drug possession. Finding upon further inspection that the substance was not cocaine, the Officers substituted actual cocaine, swore it was the substance they found on the Bentleys' property, and caused the Bentleys to be tried for drug possession based on this false testimony (Id.).

Further, Plaintiffs themselves characterize their case as exclusively involving the due process claim in Cause Two of the Complaint (doc. 1), stating at two points in briefing that the issue is whether the "facts and inferences create a 'genuine issue as to any material fact' which prevent summary judgment on the Bentleys' due process claims" and "[w]hether it was clearly established in 2002 that a police officer who fabricates evidence of a crime violates the Fourteenth Amendment rights of an accused who is tried as a result of that fabrication" (doc. 47).

Defendants argue that these two issues should be dismissed as a matter of law (doc. 48). The Court agrees and finds that Plaintiffs have waived Causes One and Three of their Complaint. Therefore, the Court dismisses Plaintiffs' first and third causes of action.

**B. Count Two of the Complaint**

As to Plaintiffs' remaining claim that Defendants violated Plaintiffs' Fourteenth Amendment rights to due process, Defendants have presented two basic arguments in support of their motion for summary judgment. First, Defendants aver that Plaintiffs can present no credible evidence in support of their

-8-

allegations that Defendants fabricated evidence (doc. 38). Second, Defendants state that they are entitled to qualified immunity (Id.). The Court will address each of these arguments in turn.

### 1. Sufficiency of Evidence

Defendants' first basis for summary judgment is that Plaintiffs can produce no evidence to support their contention that Defendants switched the "deer cocaine" found at Plaintiffs' residence with real cocaine (doc. 48). Defendants correctly state that Plaintiffs can point to no evidence showing that any of the four Defendants actually made such a switch (doc. 38 (citing Arnold Bentley's deposition testimony where he is asked if he had support for his allegation that it was any one of the four Defendants who switched the contents, and responding "No, at this point I don't.")). Defendants note that the only name Plaintiffs have ever speculated as having switched the evidence is James Malott, an officer with the Bureau of Criminal Investigations ("BCI") who is not a Defendant in this case (Id.).

Furthermore, Defendants aver that Plaintiffs have presented no evidence to support their theory that Defendants learned the white powder they took from Plaintiffs' home was not cocaine, prompting Defendants to fabricate the evidence (Id.). Defendants maintain that the substance was first tested at BCI, where it was determined that the substance was, in fact, cocaine (doc. 48). Finally, Defendants contend that Plaintiffs have no

evidence to support their claim that the cocaine produced at the Plaintiffs' criminal trial was bagged differently from the white powder taken from the Plaintiffs' residence (Id.).

In support of their position, Defendants extensively cite to the deposition of Plaintiff Arnold Bentley, who admits that he has no direct evidence that the alleged events took place (Id., doc. 38).  Further, Defendants produce the affidavits of each Defendant which recount the search of Plaintiffs residence and the handling of the white powder found on the premises, and deny Plaintiffs accusations (Id.).  Finally, Defendants submit an affidavit of Misty Thatcher, the Adams County Sheriff's Office evidence custodian (Id.).  Ms. Thatcher states that the evidence in question did not leave her possession except to be tested by BCI (Id.).

To the contrary, Plaintiffs offer the following evidence in support of their claims:

> (1) Arnold Bentley claims to have witnessed Defendant McCarty go into the Bentley's house, then to the barn, then run out of the barn and throw the bag in question in front of the trailer.  Mr. Bentley maintains that when he looked in the barn after his release from jail, the bag of deer cocaine he routinely kept there was gone (doc. 47).
>
> (2) Plaintiffs claim that the genuine cocaine produced at

> trial was bagged differently than the white powder found at Plaintiffs' residence (Id.).
>
> (3) The search of Plaintiffs' farm buildings produced no scales, no baggies, no cash, and no other evidence of illegal drug transactions (Id.).
>
> (4) Plaintiffs were acquitted in their criminal trial (Id.).

Plaintiffs argue that although the eye-witness testimony of Arnold Bentley is in conflict with the affidavits of Defendants, for the purposes of this motion, Mr. Bentley's testimony must be taken as true (Id. (citing Howard ex rel. Estate of Howard v. Bayes, 457 F.3d 568, 571 (6th Cir. 2006))). Furthermore, Plaintiffs aver that all favorable inferences that can be drawn from the evidence they have presented must be accepted in deciding this motion (Id. (citing Howard, 457 F.3d at 571)). Finally, Plaintiffs contend that given the above facts and the inferences fairly drawn therefrom, there exists a genuine issue of material fact which prevents summary judgment on Plaintiffs' due process claim (Id.).

After a careful review of the record, the Court finds Plaintiffs' arguments well-taken. Plaintiffs have presented eye-witness testimony which directly contradicts the affidavits of Defendants (doc. 47) and Defendants have put forth no evidence to suggest that Mr. Bentley could not have witnessed what he claims to have seen (doc. 38). It is not the provence of the Court to weigh

evidence or assess the credibility of witnesses in deciding this motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994). The trier of fact must resolve the inconsistencies presented by the parties' evidence and determine which witnesses are credible.[2] Thus, the Court finds that the conflicting stories of what happened during the search of Plaintiffs' residence and the inferences fairly drawn from Plaintiffs' remaining evidence create a genuine issue of material fact which precludes a grant of summary judgment.

### 2. Qualified Immunity

As an alternative to their first argument, Defendants maintain that they are entitled to qualified immunity for any actions alleged by Plaintiffs (doc. 38). Qualified immunity is a long-standing doctrine that provides officials "immunity from [the indignities of] suit rather than a mere defense to liability." Saucier v. Katz, 533 U.S. 194, 200-201 (2001). In sum, it protects officials from being held liable for constitutional violations they may have been committed but that, due to a lack of previous pronouncement by a court recognizing the particular right in question, they had no reason to know they were doing so. Under Supreme Court precedent, determining whether a police officer is entitled to qualified immunity is a two-step process. First, the Court must ascertain whether the officer's alleged conduct violated

---

[2]If the jury determines that any witness has lied under oath, the penalty for perjury may apply.

a constitutional right.  See Chavez v. Martinez, 538 U.S. 760, 766 (2003); Saucier, 533 U.S. at 201.  In other words, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  If it does not, then the inquiry is at an end: the officer is entitled to qualified immunity from suit.  See Chavez, 538 U.S. at 766; Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")  If, however, the complained-of conduct would violate one or more of the plaintiff's constitutional rights, a second inquiry is required: The Court must ascertain whether the particular right allegedly violated was clearly established at the time the violation occurred.  Saucier, 533 U.S. at 201.  The Supreme Court has, however, circumscribed the scope of the review of this issue:

> This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.
>
> [W]e emphasized in Anderson "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  The relevant,

-13-

>dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Saucier, 533 U.S. at 201-202 (citations omitted); see also Wilson v. Layne, 526 U.S. 603, 615 (1999)("[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").

Taking each of these inquiries in turn, the Court must first establish whether Plaintiffs have alleged a constitutional violation. It is well settled that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." Napue v. People of State of Illinois, 360 U.S. 264, 269 (1959). Nonetheless, Defendants aver that they are entitled to qualified immunity because "Plaintiffs have no evidence to support their allegations and no reasonable minds could conclude that Plaintiffs' allegations are true." However, the Court has concluded supra that Plaintiffs produced evidence sufficient to survive Defendants' motion for summary judgment on the question of whether Defendants fabricated evidence in violation of Plaintiffs' Fourteenth Amendment rights to due process. Accordingly, the Court, by viewing the facts "in the light most favorable to the party asserting the injury," finds the first prong satisfied in that the conduct alleged, if true, would

constitute a constitutional violation.  Saucier, 533 U.S. at 201.

Turning to the second prong – the requirement that the right in question be "clearly established" – the Court must ask whether as of July 2002, when the Plaintiffs were arrested, it was clearly established that a police officer who fabricates evidence of a crime violates the constitutional rights of the accused.  The Court finds that there is sufficient case law to establish that, at the time of this event, no reasonable officer could believe that fabricating evidence was lawful.  See eg. Napue, 360 U.S. at 269 (stating that "the principle that a State may not knowingly use false evidence...to obtain a tainted conviction" is "implicit in any concept of ordered liberty"), Gregory v. City of Louiville, 444 F.3d 725 (6th Cir. 2006) (finding that qualified immunity was not proper when the allegation concerned the fabrication of evidence), Spurlock v. Satterfield, 167 F.3d 995, 1005 (6th Cir. 1999) (stating that no one could "seriously contend that a reasonable police officer would not know that such actions [as fabricating evidence] were inappropriate and performed in violation of an individual's constitutional and/or statutory rights.").[3]  Therefore, the Court finds that Defendants are not entitled to qualified immunity.

---

[3] Defendants attempt to distinguish the instant case from those cited by stating "[t]hose cases are all distinguishable and uncontrolling on the facts of this case, where Plaintiffs have no evidence to support their claim that Defendants switched the contents of a bag of deer salt with cocaine."  However, as noted supra, the Court has found that Plaintiffs do have sufficient evidence to overcome summary judgment.

**IV. Conclusion**

   For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment (doc. 74) as to Causes One and Three of Plaintiffs' Complaint (doc. 1) and DENIES Defendants' Motion as to Cause Two of the Complaint (Id.).

   SO ORDERED.

Dated: October 25, 2006   s/S. Arthur Spiegel
               S. Arthur Spiegel
               United States Senior District Judge